## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARLA GREEN and MICHAEL GREEN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 08-472-GPM |
| | ) |
| GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., | ) |
| | ) |
| Defendant. | ) |

### GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.'S
### ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant Goodyear Dunlop Tires North America, Ltd. (hereinafter "GDTNA"), by and through its undersigned attorneys, Perkins Coie LLP, hereby answers the Complaint propounded by the plaintiffs, Darla Green and Michael Green, as follows:

### COUNT I
### (Darla Green – Strict Liability – Manufacturing Defect)

1.      At all times relevant to this suit, DARLA GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.      Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**      GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business

of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs'

allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require

no response.  To the extent any further response is required, GDTNA denies the remaining

allegations of this paragraph.

3.     The tire, which is the subject of this suit, was purchased in Brighton, Madison
County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison
County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 3 and therefore denies them.

4.     On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN
owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No.
1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in
Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and
catastrophically deflated.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     At the above described time and location, the 2003 Harley Davidson Ultra being
operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL
GREEN and DARLA GREEN.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 5 and therefore denies them.

6.     That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above
in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16
74H made at DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      The subject tire is built with a three-ply polyester casing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was manufactured and sold by DUNLOP.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      DUNLOP manufactured and sold the subject tire in the ordinary course of its business.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.     The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of the incident.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.     At all times relevant hereto, the subject tire was defective and unreasonably dangerous when put to a reasonably anticipated use in one or more of the following respects:

  (a)     The tire was manufactured without the rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

  (b)     The tire was manufactured without the proper type or amount of rubber being applied over the cords;

  (c)     The tire was manufactured without adequate adhesion of the polyester carcass to the rubber.

**ANSWER:**       GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (c).

12.       That as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the Plaintiff, DARLA GREEN, sustained injuries to various parts of her body, when she was thrown from the motorcycle as described above, including but not limited to severe traumatic brain injury, skull fracture, multiple fractured ribs, fractured left clavicle, punctured lung, lacerated liver, lacerated spleen, laceration to the right eye, multiple severe lacerations and abrasions, and loss of vision, and as a result thereof she has and will in the future experience:

      (a)       Pain and suffering, both physical and mental;

      (b)       Disability and/or loss of a normal life;

      (c)       Disfigurement;

      (d)       Medical expenses;

      (e)       Wage losses and/or impairment of earning capacity; and

      (f)       An increased risk of future injuries.

**ANSWER:**       GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, DARLA GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**   GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.   GDTNA respectfully requests judgment in its favor and against Plaintiff on Count I of Plaintiffs' Complaint.

## COUNT II
### (Darla Green – Strict Liability – Design Defect)

1.      At all times relevant to this suit, DARLA GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.      Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**      GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.      The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.      On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.        At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.        That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16 74H made at Defendant DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.        The subject tire is built with a three-ply polyester casing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.        That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was designed, manufactured and sold by DUNLOP.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.        DUNLOP designed and sold the subject tire in the ordinary course of its business.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.    The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of the incident.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.    At all times relevant hereto, the subject tire was defective and unreasonably dangerous in one or more of the following respects:

(a)    Was designed without proper rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

(b)    Was designed without the proper amount or type of rubber being applied over the cords;

(c)    Was designed without proper adhesion of the polyester carcass to the rubber.

**ANSWER:**        GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (c).

12.    That as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the Plaintiff, DARLA GREEN, sustained injuries to various parts of her body, when she was thrown from the motorcycle as described above, including but not limited to severe traumatic brain injury, skull fracture, multiple fractured ribs, fractured left clavicle, punctured lung, lacerated liver, lacerated spleen, laceration to the right eye, multiple severe lacerations and abrasions, and loss of vision, and as a result thereof she has and will in the future experience:

(a)    Pain and suffering, both physical and mental;

(b)    Disability and/or loss of a normal life;

(c)    Disfigurement;

(d)    Medical expenses;

(e)    Wage losses and/or impairment of earning capacity; and

(f)    An increased risk of future injuries.

**ANSWER:**        GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, DARLA GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**        GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count II of Plaintiffs' Complaint.

## COUNT III
### (Darla Green – Negligence)

1.        At all times relevant to this suit, DARLA GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.        Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**        GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.      The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.      On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.      At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.      That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16 74H made at DUNLOP's manufacturing plant during the tenth week of 2007 and was designed, manufactured, and sold in the ordinary course of DUNLOP's business.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      The subject tire is built with a three-ply polyester casing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.    That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was designed, manufactured and sold by DUNLOP.

**ANSWER:**    GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.    The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of the incident.

**ANSWER:**    GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.    That DUNLOP, by and through its agents, servants or employees, was negligent in one or more of the following respects:

(a)    Designed, manufactured and/or sold the tire without the rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

(b)    Designed, manufactured and/or sold the tire without the proper type or amount of rubber being applied over the cords;

(c)    Designed, manufactured and/or sold the tire without adequate adhesion of the polyester carcass to the rubber;

(d)    Failed to manufacture the tire in compliance with the design specifications for the subject tire;

(e)    Failed to properly inspect and/or test the tire and/or its component materials during the manufacturing process to ensure that the tire was adequately and properly manufactured;

(f)    Sold or delivered into a stream of commerce an unsafe and unreasonably dangerous tire when it knew or should have known of the dangers to the user of said tire.

**ANSWER:**    GDTNA denies all the allegations contained within Paragraph 10, including the allegations of sub-paragraphs (a) through (f).

11.    That as a direct and proximate result of one or more of the aforesaid acts and/or omissions of negligence by DUNLOP, the Plaintiff, DARLA GREEN, sustained injuries to

various parts of her body, when she was thrown from the motorcycle as described above, including but not limited to severe traumatic brain injury, skull fracture, multiple fractured ribs, fractured left clavicle, punctured lung, lacerated liver, lacerated spleen, laceration to the right eye, multiple severe lacerations and abrasions, and loss of vision, and as a result thereof she has and will in the future experience:

      (a)    Pain and suffering, both physical and mental;

      (b)    Disability and/or loss of a normal life;

      (c)    Disfigurement;

      (d)    Medical expenses;

      (e)    Wage losses and/or impairment of earning capacity; and

      (f)    An increased risk of future injuries.

**ANSWER:**     GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, DARLA GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**     GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count III of Plaintiffs' Complaint.

<u>**COUNT IV**</u>
**(Darla Green – Breach of Implied Warranty of Merchantability)**

1.    At all times relevant to this suit, DARLA GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.     Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**     GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.     The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.     On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 5 and therefore denies them.

6.      That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above
in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16
74H made at DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      The subject tire is built with a three-ply polyester casing with two fiberglass belts
and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra
identified above in Paragraph 4, and was well within its tread life at the time of its failure on or
about July 27, 2007.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      DUNLOP designed, manufactured and sold the subject tire in the ordinary course
of its business.

**ANSWER:**          GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      At all times relevant hereto, DUNLOP was a merchant of motorcycle tires,
including the subject tire identified above in Paragraph 6.

**ANSWER:**          GDTNA admits that it is and was a merchant of motorcycle tires, but

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 9 and therefore denies them.

10.      At all times relevant hereto, DUNLOP did impliedly warrant that its motorcycle
tires, including the subject tire, were of merchantable quality pursuant to 810 ILCS 5/2-314.

**ANSWER:**      The allegations of paragraph 10 state legal conclusions to which no response is required.  To the extent that a response is required, GDTNA denies the allegations in Paragraph 10.

11.    DUNLOP did breach the aforementioned implied warranty of merchantability in that the subject tire was not of merchantable quality in that the tire was not fit for the ordinary purposes for which it was intended to be used.

**ANSWER:**      GDTNA denies the allegations of Paragraph 11.

12.    That as a direct and proximate result of the aforesaid breach of implied warranty of merchantability by DUNLOP, the Plaintiff, DARLA GREEN, sustained injuries to various parts of her body, when she was thrown from the motorcycle as described above, including but not limited to severe traumatic brain injury, skull fracture, multiple fractured ribs, fractured left clavicle, punctured lung, lacerated liver, lacerated spleen, laceration to the right eye, multiple severe lacerations and abrasions, and loss of vision, and as a result thereof she has and will in the future experience:

(a)    Pain and suffering, both physical and mental;

(b)    Disability and/or loss of a normal life;

(c)    Disfigurement;

(d)    Medical expenses;

(e)    Wage losses and/or impairment of earning capacity; and

(f)    An increased risk of future injuries.

**ANSWER:**      GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, DARLA GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**        GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count IV of Plaintiffs' Complaint.

## COUNT V
### (Michael Green – Loss of Consortium)

1.      Plaintiff MICHAEL GREEN realleges and incorporates by reference the allegations contained in Counts I through IV above.

**ANSWER:**        GDTNA hereby incorporates by reference its responses to the allegations contained in Counts I through IV above as if fully set forth herein.

2.      As the spouse of DARLA GREEN, MICHAEL GREEN was accustomed to, and did receive love, affection, and care from DARLA GREEN and was dependant on her for the necessities of life that she provided.  In addition, he was entitled to and did receive consortium and society of DARLA GREEN and other concomitants of married life.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3.      Notwithstanding its duties to DARLA GREEN and MICHAEL GREEN, DUNLOP did, as direct and proximate result of the, acts and omissions specified above, cause serious and permanent injuries to DARLA GREEN and that said injuries have deprived MICHAEL GREEN of the services, society, companionship, love, and affection of DARLA GREEN.

**ANSWER:**        GDTNA denies the allegations of Paragraph 3.

WHEREFORE, the Plaintiff, MICHAEL GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**        GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count V of Plaintiffs' Complaint.

**COUNT VI**
**(Michael Green – Strict Liability – Manufacturing Defect)**

1.        At all times relevant to this suit, MICHAEL GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.        Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**        GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.        The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.      On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.      At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.      That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16 74H made at DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      The subject tire is built with a three-ply polyester casing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was manufactured and sold by DUNLOP.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.    DUNLOP manufactured and sold the subject tire in the ordinary course of its business.

**ANSWER:**    GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.    The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of the incident.

**ANSWER:**    GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.    At all times relevant hereto, the subject tire was defective and unreasonably dangerous when put to a reasonably anticipated use in one or more of the following respects:

(a)    The tire was manufactured without the rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

(b)    The tire was manufactured without the proper type or amount of rubber being applied over the cords;

(c)    The tire was manufactured without adequate adhesion of the polyester carcass to the rubber.

**ANSWER:**    GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (c).

12.    That as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the Plaintiff, MICHAEL GREEN, sustained injuries to various parts of his body, when he was thrown from the motorcycle as described above, including but not limited to multiple severe lacerations and abrasions and extreme emotional distress, and as a result thereof he has and will in the future experience:

(a)    Pain and suffering, both physical and mental;

(b)    Disability and/or loss of a normal life;

(c)    Disfigurement;

(d)    Medical expenses;

(e)       Wage losses and/or impairment of earning capacity; and

(f)       An increased risk of future injuries,

**ANSWER:**       GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, MICHAEL GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**       GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.   GDTNA respectfully requests judgment in its favor and against Plaintiff on Count VI of Plaintiffs' Complaint.

## <u>COUNT VII</u>
### (Michael Green – Strict Liability – Design Defect)

1.       At all times relevant to this suit, MICHAEL GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**       GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.       Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.   Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**       GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.   Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.   Plaintiffs'

allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require

no response.   To the extent any further response is required, GDTNA denies the remaining

allegations of this paragraph.

3.     The tire, which is the subject of this suit, was purchased in Brighton, Madison
County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison
County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 3 and therefore denies them.

4.     On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN
owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No.
1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in
Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and
catastrophically deflated.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     At the above described time and location, the 2003 Harley Davidson Ultra being
operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL
GREEN and DARLA GREEN

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 5 and therefore denies them.

6.     That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above
in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16
74H made at Defendant DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 6 and therefore denies them.

7.     The subject tire is built with a three-ply polyester casing with two fiberglass belts
and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra

identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**       GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was designed, manufactured and sold by DUNLOP.

**ANSWER:**       GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      DUNLOP designed and sold the subject tire in the ordinary course of its business.

**ANSWER:**       GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.      The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of the incident.

**ANSWER:**       GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.      At all times relevant hereto, the subject tire was defective and unreasonably dangerous in one or more of the following respects:

(a)      Was designed without proper rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

(b)      Was designed without the proper amount or type of rubber being applied over the cords;

(c)      Was designed without proper adhesion of the polyester carcass to the rubber.

**ANSWER:**       GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (c).

12.     That as a direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions, the Plaintiff, MICHAEL GREEN, sustained injuries to various parts of his body, when he was thrown from the motorcycle as described above, including but not limited to multiple severe lacerations and abrasions and extreme emotional distress, and as a result thereof he has and will in the future experience:

        (a)     Pain and suffering, both physical and mental;

        (b)     Disability and/or loss of a normal life;

        (c)     Disfigurement;

        (d)     Medical expenses;

        (e)     Wage losses and/or impairment of earning capacity; and

        (f)     An increased risk of future injuries.

**ANSWER:**     GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, MICHAEL GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**     GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count VII of Plaintiffs' Complaint.

## COUNT VIII
### (Michael Green – Negligence)

1.     At all times relevant to this suit, MICHAEL GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.     Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**     GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.     The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.     On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.        That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16 74H made at DUNLOP's manufacturing plant during the tenth week of 2007 and was designed, manufactured, and sold in the ordinary course of DUNLOP's business.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.        The subject tire is built with a three-ply polyester casing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.        That until the sudden deflation identified above in Paragraph 4, the subject tire was in substantially the same condition as when it was designed, manufactured and sold by DUNLOP.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.        The subject tire was being used in the manner reasonably anticipated by DUNLOP at the time of incident.

**ANSWER:**        GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.        That DUNLOP, by and through its agents, servants or employees, was negligent in one or more of the following respects:

   (a)        Designed, manufactured and/or sold the tire without the rubber skim stock tightly bonded to the carcass ply resulting in the rubber failing to properly adhere to the cords;

    (b)      Designed, manufactured and/or sold the tire without the proper type or amount of rubber being applied over the cords;

    (c)      Designed, manufactured and/or sold the tire without adequate adhesion of the polyester carcass to the rubber;

    (d)      Failed to manufacture the tire in compliance with the design specifications for the subject tire;

    (e)      Failed to properly inspect and/or test the tire and/or its component materials during the manufacturing process to ensure that the tire was adequately and properly manufactured;

    (f)      Sold or delivered into a stream of commerce an unsafe and unreasonably dangerous tire when it knew or should have known of the dangers to the user of said tire.

**ANSWER:**      GDTNA denies all the allegations contained within Paragraph 10, including the allegations of sub-paragraphs (a) through (f).

11.    That as a direct and proximate result of one or more of the aforesaid acts or omissions of negligence by DUNLOP, the Plaintiff, MICHAEL GREEN, sustained injuries to various parts of his body, when he was thrown from the motorcycle as described above, including but not limited to multiple severe lacerations and abrasions and extreme emotional distress, and as a result thereof he has and will in the future experience:

    (a)      Pain and suffering, both physical and mental;

    (b)      Disability and/or loss of a normal life;

    (c)      Disfigurement;

    (d)      Medical expenses;

    (e)      Wage losses and/or impairment of earning capacity; and

    (f)      An increased risk of future injuries.

**ANSWER:**      GDTNA denies all the allegations contained within Paragraph 11, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, MICHAEL GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**     GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.   GDTNA respectfully requests judgment in its favor and against Plaintiff on Count VIII of Plaintiffs' Complaint.

<u>**COUNT IX**</u>
**(Michael Green – Breach of Implied Warranty of Merchantability)**

1.     At all times relevant to this suit, MICHAEL GREEN has been a resident of Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2.     Defendant DUNLOP was at all times mentioned herein a limited liability company organized under the laws of the State of Ohio, authorized to do business in the State of Illinois, with its principal office in Buffalo, New York.  Defendant DUNLOP is engaged in the business of designing, manufacturing, distributing, marketing, selling and/or servicing tires, including motorcycle tires, in Illinois and thus is subject to in personam jurisdiction before this Court.

**ANSWER:**     GDTNA admits that it is a limited liability company organized under the laws of the State of Ohio, with its principal office in Buffalo, New York, and that it is authorized to do business in the State of Illinois.  Goodyear also admits that it is in the business of designing, manufacturing, distributing, marketing, and selling motorcycle tires.  Plaintiffs' allegations relating to the jurisdiction of this Court are legal conclusions, and therefore require no response.  To the extent any further response is required, GDTNA denies the remaining allegations of this paragraph.

3.     The tire, which is the subject of this suit, was purchased in Brighton, Madison County, Illinois via the internet and delivered to the Plaintiffs' home in Brighton, Madison County, Illinois.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies them.

4.     On or about July 27, 2007, at approximately 1:55 p.m., MICHAEL GREEN owned and was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 in an westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri, when the rear tire on the 2003 Harley Davidson Ultra suddenly and catastrophically deflated.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     At the above described time and location, the 2003 Harley Davidson Ultra being operated by MICHAEL GREEN went out of control and wrecked, ejecting both MICHAEL GREEN and DARLA GREEN.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.     That the rear tire on the 2003 Harley Davidson Ultra motorcycle, identified above in Paragraph 4, (hereinafter referred to as the "subject tire") was an HD Dunlop D402 MT90B16 74H made at DUNLOP's manufacturing plant during the tenth week of 2007.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.     The subject tire is built with a three-ply polyester easing with two fiberglass belts and is the manufacturer's recommended size for the rear of the 2003 Harley Davidson Ultra identified above in Paragraph 4, and was well within its tread life at the time of its failure on or about July 27, 2007.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      DUNLOP designed, manufactured and sold the subject tire in the ordinary course of its business.

**ANSWER:**      GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      At all times relevant hereto, DUNLOP was a merchant of motorcycle tires, including the subject tire identified above in Paragraph 6.

**ANSWER:**      GDTNA admits that it is and was a merchant of motorcycle tires, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore denies them.

10.      At all times relevant hereto, DUNLOP did impliedly warrant that its motorcycle tires, including the subject tire, were of merchantable quality pursuant to 8 10 ILCS 5/2-314.

**ANSWER:**      The allegations of paragraph 10 state legal conclusions to which no response is required.  To the extent that a response is required, GDTNA denies the allegations in Paragraph 10.

11.      DUNLOP did breach the aforementioned implied warranty of merchantability in that the subject tire was not of merchantable quality in that the tire was not fit for the ordinary purposes for which it was intended to be used.

**ANSWER:**      GDTNA denies the allegations f Paragraph 11.

12.      That as a direct and proximate result of the aforesaid breach of implied warranty of merchantability by DUNLOP, the Plaintiff, MICHAEL GREEN, sustained injuries to various parts of his body, when he was thrown from the motorcycle as described above, including but not limited to multiple severe lacerations and abrasions and extreme emotional distress, and as a result thereof he has and will in the future experience:

(a)      Pain and suffering, both physical and mental;

(b)      Disability and/or loss, of a normal life;

(c)      Disfigurement;

(d)      Medical expenses;

(e)     Wage losses and/or impairment of earning capacity; and

(f)     An increased risk of future injuries.

**ANSWER:**     GDTNA denies all the allegations contained within Paragraph 12, including the allegations of sub-paragraphs (a) through (f).

WHEREFORE, the Plaintiff, MICHAEL GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**     GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.  GDTNA respectfully requests judgment in its favor and against Plaintiff on Count IX of Plaintiffs' Complaint.

## COUNT X
### (Darla Green – Loss of Consortium)

1.     Plaintiff DARLA GREEN realleges and incorporates by reference the allegations contained in Counts VI through IX above.

**ANSWER:**     GDTNA hereby incorporates by reference its responses to the allegations contained in Counts VI through IX above as if fully set forth herein.

2.     As the spouse of MICHAEL GREEN, DARLA GREEN was accustomed to, and did receive love, affection, and care from MICHAEL GREEN and was dependant on him for the necessities of life that he provided.  In addition, she was entitled to and did receive consortium and society of MICHAEL GREEN and other concomitants of married life.

**ANSWER:**     GDTNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3.     Notwithstanding its duties to DARLA GREEN and MICHAEL GREEN, DUNLOP did, as direct and proximate result of the acts and omissions specified above, cause serious and permanent injuries to MICHAEL GREEN and that said injuries have deprived

DARLA GREEN of the services, society, companionship, love, and affection of MICHAEL GREEN.

**ANSWER:**        GDTNA denies the allegations contained in paragraph 3.

WHEREFORE, the Plaintiff, DARLA GREEN, prays for judgment against DUNLOP in an amount reasonable and equitable and in excess of Fifty Thousand Dollars and 00/100 ($50,000.00), plus cost of suit.

**ANSWER:**        GDTNA denies all the allegations contained within this Paragraph and specifically denies that Plaintiff is entitled to any relief from GDTNA.   GDTNA respectfully requests judgment in its favor and against Plaintiff on Count X of Plaintiffs' Complaint.

## GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD'S AFFIRMATIVE DEFENSES

Now comes Defendant, Goodyear Dunlop Tires North America, Ltd. ("GDTNA"), by and through its attorneys, Perkins Coie LLP, and for its Affirmative Defenses, without prejudice to its denials and averments made in its Answer, raises the following affirmative defenses to Plaintiffs' Complaint, in complete or partial bar thereof:

## FIRST AFFIRMATIVE DEFENSE

1.        Plaintiffs filed a Complaint arising out of an incident that occurred on July 27, 2007, alleging that GDTNA's negligence caused their alleged injuries and damages.

2.        At the time of the incident, Plaintiff Michael Green was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 ("the subject motorcycle"), in a westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri.

3.        Plaintiff Darla Green was a passenger on the subject motorcycle.

4.        At all relevant times, Plaintiffs had a duty to exercise reasonable care for their own safety and Plaintiff Michael Green had a duty to exercise reasonable care for the safety of his passenger.

5.        Notwithstanding Plaintiffs' aforementioned duties, they failed to exercise reasonable care for their own safety and/or the safety of the passenger at all relevant times and therefore negligently caused or contributed to their injuries when they:

a.   failed to adequately maintain the motorcycle;

b.   failed to adequately service and maintain the motorcycle's tires;

c.   failed to adequately inspect the motorcycle before operating it;

d.   failed to adequately inspect the motorcycle's tires before operating it;

e.   failed to follow the owner's manual regarding the proper and safe use of the motorcycle;

f.   operated the motorcycle in a manner unsafe for conditions;

g.   failed to follow posted speed limits;

h.   operated the motorcycle in a reckless or unsafe manner;

i.   operated the motorcycle in a manner neither intended nor reasonably foreseeable by GDTNA;

j.   failed to wear appropriate safety gear;

k.   misused the tires and motorcycle;

l.   voluntarily and knowingly assumed the risks associated with using the subject motorcycle and its component parts, including the subject tire;

m.   were otherwise negligent.

6.     As a result of one or more of the aforementioned negligent acts and/or omissions by Plaintiffs, they sustained their alleged injuries and damages.

7.     Because the contributory fault on the part of Plaintiffs in causing their alleged injuries is more than 50% of the proximate cause of the injuries or damages for which recovery is sought, Plaintiffs are barred from recovering from GDTNA pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-1116.  Plaintiffs, therefore, have no basis for an action against GDTNA.

8.     In the alternative, if the trier of fact finds the contributory fault on the part of Plaintiffs is not more than 50% of the total proximate cause of the injuries or damages for which recovery is sought, any judgment entered in favor of Plaintiffs must be reduced by Plaintiffs' *pro rata* share of fault in causing their injuries or damages.  *See* 735 ILCS 5/2-1116(c).

WHEREFORE, Defendant GDTNA respectfully requests that this Court enter judgment against Plaintiffs and in its favor in that Plaintiffs were greater than 50% at fault for the alleged injuries and damages.  Alternatively, if the fault of Plaintiffs is found to be less than 50% of the total fault causing the alleged injuries and damages, GDTNA prays that any judgment entered in

favor of the Plaintiffs be reduced in proportion to their relative degree of fault in causing the injuries or damages.

## SECOND AFFIRMATIVE DEFENSE

1.      Plaintiffs filed a Complaint arising out of an incident that occurred on July 27, 2007, alleging that GDTNA's negligence caused their alleged injuries and damages.

2.      At the time of the incident, Plaintiff Michael Green was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 ("the subject motorcycle"), in a westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri.

3.      Plaintiff Darla Green was a passenger on the subject motorcycle.

4.      At all relevant times, Plaintiffs had a duty to exercise reasonable care for their own safety and Plaintiff Michael Green had a duty to exercise reasonable care for the safety of his passenger.

5.      Notwithstanding Plaintiffs' aforementioned duties, they failed to exercise reasonable care for their own safety and/or the safety of the passenger at all relevant times and therefore negligently caused or contributed to their injuries when they:

   a.      failed to adequately maintain the motorcycle;

   b.      failed to adequately service and maintain the motorcycle's tires;

   c.      failed to adequately inspect the motorcycle before operating it;

   d.      failed to adequately inspect the motorcycle's tires before operating it;

   e.      failed to follow the owner's manual regarding the proper and safe use of the motorcycle;

   f.      operated the motorcycle in a manner unsafe for conditions;

   g.      failed to follow posted speed limits;

   h.      operated the motorcycle in a reckless or unsafe manner;

   i.      operated the motorcycle in a manner neither intended nor reasonably foreseeable by GDTNA;

   j.      failed to wear appropriate safety gear;

   k.      misused the tires and motorcycle;

   l.      voluntarily and knowingly assumed the risks associated with using the subject motorcycle and its component parts, including the subject tire;

     m.       were otherwise negligent.

9.      As a result of one or more of the aforementioned negligent acts and/or omissions by Plaintiffs, they sustained their alleged injuries and damages.

10.     Other defendants to this lawsuit and other persons or entities that could have been sued by Plaintiffs may also have caused the occurrence giving rise to Plaintiffs' injuries and damages.

11.     Pursuant to Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, GDTNA is only severally liable, if at all, for Plaintiffs' damages, other than those which are medical or medically related, since GDTNA's fault, which is expressly denied, is less than 25% of the total fault of Plaintiffs, all defendants sued by Plaintiffs, and all others who could have been sued by Plaintiffs for causing the occurrence giving rise to Plaintiffs' injuries and damages.

WHEREFORE, Defendant GDTNA respectfully requests that this Court enter judgment against Plaintiffs and in its favor.  If GDTNA's fault, if any, is found to be less than 25% of the total fault of Plaintiffs, all defendants sued by Plaintiffs, and all others that could have been sued by Plaintiffs for causing the occurrence giving rise to Plaintiffs' injuries and damages, GDTNA prays that the court hold it only severally liable for Plaintiffs' damages other than those which are medical or medically related.


## THIRD AFFIRMATIVE DEFENSE

1.      Plaintiffs filed a Complaint arising out of an incident that occurred on July 27, 2007, alleging that GDTNA's negligence caused their alleged injuries and damages.

2.      At the time of the incident, Plaintiff Michael Green was operating a 2003 Harley Davidson Ultra motorcycle, Vehicle Identification No. 1HD1FCW473Y644775 ("the subject motorcycle"), in a westerly direction on Interstate 70 near mile-marker 46.8 in Lafayette County, Missouri.

3.      Plaintiff Darla Green was a passenger on the subject motorcycle.

4.      At all relevant times, other individuals or entities over which GDTNA had no control or right of control owed duties to exercise reasonable care for Plaintiffs' safety.

5.      Notwithstanding their aforementioned duties, the other individuals or entities failed to exercise reasonable care for Plaintiffs' safety at all relevant times and therefore negligently caused or contributed to their injuries.

6.      As a result of negligent acts and/or omissions by the other individuals or entities, Plaintiffs sustained their alleged injuries.

7.      The aforementioned negligent acts and/or omissions were a superseding cause of Plaintiffs' injuries and damages.

8.      Accordingly, Plaintiffs have no basis for a cause of action against GDTNA.

9.      In the alternative, any judgment against GDTNA should be diminished to an amount that represents its degree of negligence, fault, or responsibility, if any.

WHEREFORE, Defendant GDTNA respectfully requests judgment in its favor and against Plaintiffs.  Alternatively, GDTNA asks that any judgment entered in favor of the Plaintiffs be diminished to an amount that represents its degree of negligence, fault, or responsibility, if any.

Dated:  July 3, 2008

Respectfully submitted,


_____/s/ Jade R. Lambert_____
One of the attorneys for Defendant
Goodyear Dunlop Tires North America, Ltd.


Jade R. Lambert (No. 6290000)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, Illinois  60603
Tel.:  (312) 324-8400
Fax:  (312) 324-9400

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on July 3, 2008, she caused the foregoing **GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT** to be served upon the individuals listed below via U.S. Mail by depositing the same in the mail box located at 131 South Dearborn Street, Chicago, Illinois, before the hour of 5:00 p.m.

*Attorneys for Plaintiffs*

Stephen R. Wigginton
J. Michael Weilmuenster
J. Brian Manion
Weilmuenster & Wigginton, P.C.
3201 West Main Street
Belleville, Illinois, 62226

By _____/s/ Jade R. Lambert_____
One of the attorneys for Defendant
Goodyear Dunlop Tires North America, Ltd.